FILED

2016 JUN 16  PM 5: 12

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>DAVID MICHAEL JENSEN,<br>JOHN PAL SINGH JANDA,<br>MICHAEL STEVEN SINEL,<br>MICHAEL DAVID ROUB, and<br>GARY DEAN SCHOONOVER,<br><br>              Defendants. | No. CR **CR 16 00412**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Solicit, Receive, and Pay Illegal Remuneration for Health Care Referrals; 42 U.S.C. §§ 1320a-7b(b)(1)(A), (b)(2)(A): Illegal Remunerations for Health Care Referrals; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

I.    GENERAL ALLEGATIONS

At all times relevant to this Indictment:

A.    Defendants and Related Entities

1.    Valley View Drugs, Inc. ("Valley View") was a pharmacy located at 13966 Valley View Avenue, La Mirada, California 90638, within the Central District of California.  Valley View

1   operated primarily as a multi-state mail order pharmacy with the
2   vast majority of its revenue derived from mail order
3   prescriptions and prescription refills, primarily consisting of
4   compounded pain medications.  Between September 2011 and June
5   2015, Valley View billed TRICARE, a health care program of the
6   United States Department of Defense ("DOD") Military Health
7   System, for claims involving 1,810 different TRICARE
8   beneficiaries, of whom only approximately 15 lived within a
9   twenty-mile radius of the Valley View storefront location.

10       2.   Defendant DAVID MICHAEL JENSEN ("defendant JENSEN")
11   owned and operated Valley View since approximately 2000.

12       3.   Pro-Med Marketing, LLC ("Pro-Med Marketing") was a
13   California Limited Liability Company formed in February 2013
14   that purported to provide "marketing consulting services" to
15   pharmacies.  Valley View was Pro-Med Marketing's sole client and
16   funded Pro-Med Marketing to pay "marketers" and physicians to
17   generate prescriptions for compounded pain medications.
18   Unindicted Co-Conspirator A and unindicted Co-Conspirator B
19   formed Pro-Med Marketing with a registered address of 13305 Penn
20   Street, Suite #150, Whittier, California 90602.

21       4.   Western Medical Solutions ("WMS") was a California
22   corporation formed in or about December 2009.  In or about 2011,
23   WMS began recruiting independent contractors to "market"
24   compounded pain medications to physicians on behalf of pharmacy
25   clients.  WMS was operated by unindicted Co-Conspirator C and
26   unindicted Co-Conspirator D at a registered address at 1781 Tara
27   Way, San Marcos, California 92078.

28

5.    Defendant GARY DEAN SCHOONOVER ("defendant SCHOONOVER") was retained as an independent contractor by WMS in or around early 2011.  Between in or about March 2011 and in or about 2014, defendant SCHOONOVER, working out of his residence in Clovis, California, "marketed" compounded pain medications to physicians on behalf of Valley View.

6.    Samia Solutions, LLC ("Samia") was a California Limited Liability Company formed by defendants MICHAEL STEVEN SINEL ("defendant SINEL") and MICHAEL DAVID ROUB ("defendant ROUB") on March 26, 2012, with a business address at 28310 Roadside Drive, Suite #137 in Agoura Hills, California.  On or about February 1, 2013, Samia entered into a "Marketing Subagent Agreement" with Pro-Med Marketing designed to generate prescriptions for compounded pain medications for Valley View.

7.    Defendant JOHN PAL SINGH JANDA ("defendant JANDA") was a licensed physician with a medical clinic located at 6045 North First Street, Suite # 103N in Fresno, California.  Between in or about December 2011 and in or about November 2013, defendant JANDA referred at least 148 TRICARE beneficiaries (among many other health care benefit program beneficiaries) to Valley View with prescriptions for compounded pain medications.

8.    Between in or about September 2011 and in or about June 2015, Valley View was paid at least approximately $20,000,000 by "health care benefit programs," as defined by 18 U.S.C. § 24(b), including federal health care programs and private insurers, for claims submitted for compounded pain medications.

3

9.      Between in or about September 2011 and in or about June 2015, defendant JENSEN, through Valley View and Pro-Med Marketing, in exchange for compounded medication prescriptions, paid: (a) defendants SINEL and ROUB, through Samia, approximately $4,707,974; (b) WMS approximately $4,596,897, of which, defendant SCHOONOVER received at least approximately $250,000; and (c) defendant JANDA, through an intermediary-relative, P.B., approximately $345,000.

B.      TRICARE

10.     TRICARE provided health care coverage for DOD beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

11.     Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense Health Agency ("DHA"), an agency of the DOD, was the military entity responsible for overseeing and administering the TRICARE program.

12.     TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed by a licensed physician.  Express Scripts, Inc. ("Express Scripts") administered TRICARE's prescription drug benefits.

13.     TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to

the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy.  To become a TRICARE network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

14.  On or about November 3, 2010, Valley View executed a network agreement with TRICARE (through Express Scripts), which authorized Valley View to submit claims for prescription drugs it dispensed to TRICARE beneficiaries.  Valley View updated the agreement with Express Scripts on or about May 23, 2013.

15.  Between in or about September 2011, and in or about June 2015, Valley View submitted approximately $10,066,090 in claims to TRICARE, primarily for compounded pain medications, for which TRICARE paid Valley View approximately $9,893,040.

C.    MEDICARE

16.  Medicare provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

17.  Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each beneficiary was given a unique health insurance claim number ("HICN").  Health care providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

18.  To participate in Medicare, a provider was required to submit an application in which the provider agreed to comply

5

with all Medicare-related laws and regulations.  If Medicare
approved a provider's application, Medicare assigned the
provider a Medicare "provider number," which was used for
processing and payment of claims.

19.   A health care provider with a Medicare provider number
could submit claims to Medicare to obtain reimbursement for
services and products provided to Medicare beneficiaries.

20.   Most providers submitted their claims electronically
pursuant to an agreement they executed with Medicare in which
the providers agreed that they: (a) were responsible for all
claims submitted to Medicare by themselves, their employees, and
their agents; (b) would submit claims only on behalf of those
Medicare beneficiaries who had given their written authorization
to do so; and (c) would submit claims that were accurate,
complete, and truthful.

21.   Medicare Part D provided coverage for outpatient
prescription drugs.  Medicare beneficiaries were able to obtain
Part D coverage through: (1) enrollment in one of many
prescription drug plans ("PDP"), which covered only prescription
drugs and were offered by qualified private insurance plans
(often referred to as drug plan "sponsors"), which received
reimbursement from Medicare; or (2) a Medicare Advantage plan
that covered both prescription drugs and medical services.  A
beneficiary was responsible for any deductible or co-payment
required under his or her PDP.

22.   Medicare reimbursed providers for certain compounded
drugs that were medically necessary to the treatment of a
beneficiary's illness or injury, were prescribed by a

6

beneficiary's physician or a qualified physician's assistant
acting under the supervision of a physician, and were provided
in accordance with Medicare regulations and guidelines that
governed whether a particular service or product would be
reimbursed by Medicare.

23.  A pharmacy provider was required to provide certain
information when filing claims with Medicare.  This information
included: identification of the person or entity that provided
the medication, identification of the medication that was
provided, identification of the prescribing physician,
identification of the beneficiary, and the date the prescription
was dispensed.

24.  Between in or about September 2011 and in or about
June 2015, Valley View, which was a Medicare pharmacy provider,
submitted approximately $2,504,248 in claims to Medicare for
compounded pain medications, for which Medicare paid Valley View
approximately $1,108,987.

D.   DOL-OWCP

25.  The Federal Employees' Compensation Act, Title 5,
United States Code, Sections 8101, et seq. ("FECA") provided
certain benefits to civilian employees of the United States, for
wage-loss disability due to a traumatic injury or occupational
disease sustained while working as a federal employee (the "FECA
program").

26.  The Office of Workers' Compensation Programs ("OWCP"),
a component of the Department of Labor ("DOL"), administered the
FECA program, which was a federal workers' compensation program
focused on return to work efforts and was not a medical

7

1   insurance or a retirement plan.

2       27.   When a qualified employee suffered a work-related

3   injury, the employee filed a claim for coverage with OWCP, which

4   then assigned the claimant an OWCP claim number.

5       28.   To obtain reimbursement for prescription drugs

6   provided to OWCP claimants (hereinafter referred to as

7   beneficiaries), a pharmacy had to submit its prescription claims

8   for payment to OWCP, using the beneficiary's OWCP claim number.

9   By submitting a claim for reimbursement with OWCP, the pharmacy

10  provider certified that the service or product for which

11  reimbursement was sought was medically necessary, appropriate,

12  and properly billed in accordance with accepted industry

13  standards.

14      29.   OWCP would process the claims submitted by the

15  provider, and if all required information was included, OWCP

16  would reimburse the provider in accordance with an established

17  fee schedule.

18      30.   Between in or about September 2011, and in or about

19  June 2015, Valley View submitted approximately $3,589,704 in

20  claims to OWCP under the FECA program for compounded pain

21  medications, for which OWCP paid Valley View approximately

22  $689,521.

23      E.    Federal Health Care Programs

24      31.   Tricare, Medicare, and the FECA program were "Federal

25  health care programs," as defined by 42 U.S.C. § 1320a-7b(f),

26  that affected commerce.

27      32.   Pharmacy providers were prohibited from using personal

28  health care information, which included a patient's name, date

1 | of birth, TRICARE number, Medicare HICN, or OWCP claim number,
2 | and other health care information, without the patient's
3 | knowledge and consent.

4 |       F.    Compounded Drugs Background

5 |       33.   In general, "compounding" was a practice in which a
6 | licensed pharmacist, a licensed physician, or, in the case of an
7 | outsourcing facility, a person under the supervision of a
8 | licensed pharmacist, combines, mixes, or alters ingredients of a
9 | drug or multiple drugs to create a drug tailored to the needs of
10 | an individual patient.  Compounded drugs were not FDA-approved,
11 | that is, the FDA did not verify the safety, potency,
12 | effectiveness, or manufacturing quality of compounded drugs.
13 | The California State Board of Pharmacy regulated the practice of
14 | compounding in the State of California.

15 |       34.   Compounded drugs were prescribed by a physician when
16 | an FDA-approved drug did not meet the health needs of a
17 | particular patient.  For example, if a patient was allergic to a
18 | specific ingredient in an FDA-approved medication, such as a dye
19 | or a preservative, a compounded drug would be prepared excluding
20 | the substance that triggered the allergic reaction.  Compounded
21 | drugs would also be prescribed when a patient could not consume
22 | a medication by traditional means, such as an elderly patient or
23 | a child who could not swallow an FDA-approved pill and needed
24 | the drug in a liquid form that was not otherwise available.

25 | II.  OBJECTS OF THE CONSPIRACY

26 |       35.   Beginning in or about September 2011, and continuing
27 | to in or about June 2015, in Los Angeles and Fresno Counties,
28 | within the Central and Eastern Districts of California, and

1    elsewhere, defendant JENSEN, joined by defendants SINEL and ROUB
2    from in or about May 2012 to in or about February 2015,
3    defendant SCHOONOVER from in or about April 2011 to in or about
4    February 2013, and defendant JANDA from in or about December
5    2011 to in or about November 2013, together with unindicted Co-
6    Conspirators A, B, C, and D, and others known and unknown to the
7    Grand Jury, knowingly combined, conspired, and agreed to commit
8    the following offenses against the United States:
9            a.    Knowingly and willfully soliciting or receiving
10   remuneration in return for referring an individual to a person
11   for the furnishing or arranging for the furnishing of any item
12   or service for which payment may be made in whole or in part
13   under a Federal health care program, in violation of Title 42,
14   United States Code, Section 1320a-7b(b)(1)(A); and
15           b.    Knowingly and willfully offering to pay or paying
16   any remuneration to any person to induce such person to refer an
17   individual to a person for the furnishing or arranging for the
18   furnishing of any item or service for which payment may be made
19   in whole or in part under a Federal health care program, in
20   violation of Title 42, United States Code, Section 1320a-
21   7b(b)(2)(A).
22   III. THE MANNER AND MEANS OF THE CONSPIRACY
23        36.   The objects of the conspiracy were carried out, and to
24   be carried out, in substance, as follows:
25           a.    Valley View, Pro-Med Marketing, defendants
26   JENSEN, JANDA, SINEL, ROUB, and SCHOONOVER, and their co-
27   conspirators would make and receive undisclosed payments in
28   connection with the prescription of compounded pain medications

10

1  to beneficiaries.   These payments would include: (1) payments
2  from Valley View to "marketers" in exchange for referring
3  beneficiaries and their prescriptions for compounded pain
4  medications to Valley View; and (2) payments from Valley View to
5  physicians in exchange for prescribing certain compounded pain
6  medications to beneficiaries for dispensing at Valley View.
7       b.   In an attempt to disguise the illegal nature of
8  the payments from Valley View to "marketers" and prescribing
9  physicians, defendant JENSEN, Co-Conspirator A, Co-Conspirator
10 B, and other co-conspirators, would form Pro-Med Marketing in
11 February 2013, and use it as follows:
12       (1) Pro-Med Marketing would be funded entirely by
13 Valley View to pay "marketers" and prescribing physicians
14 referral fees for steering compounded pain medication
15 prescriptions for TRICARE beneficiaries and others to Valley
16 View.
17       (2) Valley View and Pro-Med Marketing would pay
18 the referral fees to "marketers" and disguise the payments as
19 commission fees under sham marketing agreements designated
20 "Marketing Subagent Agreements."
21       (3) The sham marketing agreements entered into
22 between Pro-Med Marketing and various "marketers" would:
23 (a) falsely purport to be "for the purpose of providing
24 information to the community" concerning compounded drugs on
25 behalf of a group of pharmacies, when, in reality, the
26 agreements were exclusively for the referral of compounded pain
27 medication prescriptions to a single pharmacy, namely, Valley
28 View; (b) provide for prescription-based compensation of

approximately 33% to 50% (and occasionally even more) of the gross revenue received by Valley View (and purportedly other pharmacies) on claims submitted to health care benefit programs; (c) contain several provisions specifically identifying prohibitions against the referral of patients and related health care laws; and (d) in earlier versions of the agreements, identify a nominal commission compensation amount of 10% of total revenue collected for non-insurance beneficiaries (i.e., "Cash [walk-in] Patients").

        c.    Based on the referral fees Valley View offered, "marketers," including defendants SINEL, ROUB, and SCHOONOVER:

            (1) would solicit physicians to authorize prescriptions for compounded pain medications for beneficiaries; and

            (2) would present prescribing physicians with pre-printed prescriptions for compounded pain medication combinations specifically selected to maximize the amount federal health care benefit programs, particularly TRICARE, would reimburse for each prescription (based on established reimbursement schedules), without any regard for the medical necessity of the prescription.

        d.    The prescribing physicians, including defendant JANDA, would typically authorize the pre-printed prescriptions: (1) with no prior physician/patient relationship with the beneficiaries; (2) without the knowledge of the purported beneficiaries; and/or (3) without considering an FDA-approved (i.e. non-compounded) prescription drug for the patient.

1          e.    The prescribing physicians would typically be
2    paid either a fixed amount for each prescription authorized, or,
3    as was the case for defendant JANDA, a percentage of the gross
4    revenue received by Valley View for each prescription.

5          f.    In an effort to conceal the referral payments
6    they were receiving, prescribing physicians who would receive a
7    percentage of Valley View's gross revenue for each prescription,
8    including defendant JANDA, would have Pro-Med Marketing pay
9    referral fees to loosely related or trusted individuals, instead
10   of directly to them.

11         g.    Instead of providing compounded pain medication
12   prescriptions directly to beneficiaries, who would then be free
13   to select a pharmacy, "marketers," including defendants SINEL,
14   ROUB, and SCHOONER, or prescribing physicians, including
15   defendant JANDA, would deliver the prescriptions directly to
16   Valley View for dispensing via facsimile.

17         h.    Defendants JENSEN, JANDA, SINEL, ROUB, and
18   SCHOONOVER, along with other co-conspirators, would prescribe
19   and cause to be prescribed compounded pain medications to be
20   dispensed at Valley View for federal health care program
21   beneficiaries, who typically would fall into one of three
22   general categories:  (1) beneficiaries who had their personally
23   identifying health information misappropriated and used for
24   compounded pain medication prescriptions without their
25   knowledge; (2) beneficiaries who had an existing
26   patient/physician relationship with a prescribing physician, but
27   who never discussed or requested a compounded pain medication or
28   refill from the physician; or (3) beneficiaries who discussed

1   compounded pain medications with their respective physicians,
2   but who did not have a medical need for such a prescription, as
3   opposed to an analogous FDA-approved drug.

4          i.    In order to track referral fees, defendant
5   JENSEN, along with other co-conspirators, would make several
6   arrangements, including: (1) assigning "marketers" unique
7   identifier codes for tracking purposes; (2) requiring
8   prescriptions generated by "marketers" to bear the "marketers'"
9   assigned codes; (3) using computer software programs for billing
10  and prescription tracking, and giving co-conspirator "marketers"
11  access to certain software programs to facilitate the tracking
12  of referral fees; and (4) regularly preparing and emailing co-
13  conspirators detailed spreadsheets that tracked referral fees
14  owed to "marketers" and prescribing physicians based on each
15  prescription dispensed at Valley View.  These spreadsheets would
16  often include the health care benefit program applicable to the
17  beneficiary and prescription, including TRICARE, Medicare, and
18  the FECA program.

19         j.    Defendant JENSEN, through Valley View, would
20  direct that payments for compounded prescription claims Valley
21  View submitted to TRICARE, Medicare, the FECA program, and other
22  federal health care programs be deposited into Valley View's
23  business bank account at Bank of the West, account number ending
24  in 6710 ("the Valley View Bank of the West Account"), which
25  defendant JENSEN controlled.

26         k.    Defendant JENSEN would cause Valley View to
27  transfer large sums of money to Pro-Med Marketing -- typically
28  $500,000 or more per transfer -- to pay referral fees on

14

prescriptions generated by "marketers," including defendants SINEL, ROUB, and SCHOONOVER, and prescribing physicians, including defendant JANDA.  The funds for these transfers to Pro-Med Marketing would come from TRICARE, Medicare, the FECA program, and other federal health care programs, as payment on compounded pain medication prescription claims.

l.    Defendant JENSEN, Co-Conspirator A, Co-Conspirator B, and other co-conspirators would cause Pro-Med Marketing to pay referral fees on prescriptions generated by "marketers," including defendants SINEL, ROUB, and SCHOONOVER, and prescribing physicians, including defendant JANDA, from Pro-Med Marketing's business bank account at Bank of the West, account number ending in 294 ("the Pro-Med Marketing Bank of the West Account").

m.    Between in or around September 2011 and in or around June 2015, defendant JENSEN and other co-conspirators would cause Valley View to bill TRICARE $10,066,090, and, on the basis of these claims, TRICARE would pay Valley View a total amount of approximately $9,893,040 for compounded pain medications dispensed to TRICARE beneficiaries.

n.    Between in or around September 2011 and in or around June 2015, defendant JENSEN and other co-conspirators would cause Valley View to bill Medicare $2,504,248, and, on the basis of these claims, Medicare would pay Valley View a total amount of approximately $1,108,987 for compounded pain medications dispensed to Medicare beneficiaries.

o.    Between in or around September 2011 and in or around June 2015, defendant JENSEN and other co-conspirators

15

1    would cause Valley View to bill OWCP $3,589,704, and, on the

2    basis of these claims, OWCP would pay Valley View a total amount

3    of approximately $689,521 for compounded pain medications

4    dispensed to FECA program beneficiaries.

5    IV.    OVERT ACTS

6         37.   On or about the following dates, in furtherance of the

7    conspiracy and to accomplish its objects, defendants JENSEN,

8    JANDA, SINEL, ROUB, and SCHOONOVER, Unindicted Co-Conspirators

9    A, B, C, and D, and other co-conspirators, committed and

10   willfully caused others to commit the following overt acts,

11   among others, within the Central District of California and

12   elsewhere:

13        Overt Act No. 1:   On or about June 12, 2012, defendant

14   JENSEN, Co-Conspirator C, and Co-Conspirator D caused an ACH

15   electronic deposit from WMS to be made to defendant SCHOONOVER

16   in the amount of $6,464.57.

17        Overt Act No. 2:   On or about January 30, 2012, defendant

18   JENSEN caused Valley View to issue check number 73461, drawn on

19   the Valley View Bank of the West Account, in the amount of

20   $19,532.13, payable to a relative of defendant JANDA, P.B, for

21   the ultimate benefit of defendant JANDA.

22        Overt Act No. 3:   On or about January 29, 2013, defendant

23   SCHOONOVER caused a facsimile of a compounded pain medication

24   prescription for a Medicare beneficiary, M.B., to be sent from

25   Physician A's medical clinic, located in Fresno, California, to

26   Valley View, located in La Mirada, California.

27        Overt Act No. 4:   On or about February 4, 2013, defendant

28   JENSEN, Co-Conspirator A, and Co-Conspirator B caused Pro-Med

1  Marketing to file its Articles of Organization with the
2  California Secretary of State.

3      Overt Act No. 5:     On or about September 18, 2013,
4  defendant JANDA caused a sixteen-page facsimile of compounded
5  pain medication prescriptions for at least seven different
6  health care benefit program beneficiaries to be sent from his
7  medical clinic, located in Fresno, California, to Valley View,
8  located in La Mirada, California.

9      Overt Act No. 6:     On or about November 7, 2013, defendant
10  JANDA caused a facsimile of a compounded pain medication
11  prescription for a TRICARE beneficiary, D.H., to be sent from
12  his medical clinic, located in Fresno, California, to Valley
13  View, located in La Mirada, California.

14      Overt Act No. 7:     On or about August 4, 2014, defendant
15  JENSEN, Co-Conspirator A, and Co-Conspirator B caused Pro-Med
16  Marketing to issue check number 0777, drawn on Pro-Med
17  Marketing's Bank of the West Account, in the amount of
18  $55,848.21, payable to "Samia Solutions LLC," for the benefit of
19  defendants SINEL and ROUB.

20      Overt Act No. 8:     On or about October 14, 2014, defendant
21  JENSEN caused Valley View to issue check number 78090, drawn on
22  the Valley View Bank of the West Account, in the amount of
23  $600,000, payable to Pro-Med Marketing.

24      Overt Act No. 9:     On or about January 8, 2015, defendant
25  JENSEN caused Pro-Med Marketing to email a letter attachment
26  purporting to be "from Pro-Med Marketing's Legal Counsel
27  regarding government programs" to various third-party "marketing
28  representatives."  After citing the "Federal Anti-Kickback

17

Statute" and noting the need for "restrictions on marketing practices" and "methods of compensating marketers," the letter referenced the creation of a "Professional Employer Organization ('PEO')" to "safeguard the compensation arrangements amongst Pro-Med Marketing[], Valley View[], and you" [referring to recipient "marketers"].  The letter further noted that because "commission payments to marketing representatives, that are independent contractors, may be prohibited by Federal and most State laws," Pro-Med Marketing would be circulating new marketing agreements that essentially re-characterized the "marketers" as *bona fide* employees.  The email distribution of the letter included dozens of co-conspirators, including defendants JENSEN and SCHOONOVER.

    Overt Act No. 10:   In or around April 2015, defendant JENSEN caused Valley View to submit a claim to TRICARE in the amount of approximately $3,000 for a compounded pain medication prescription, but dispensed the same compounded pain medication formulary for approximately $190 to an individual, who defendant JENSEN and other Valley View employees believed was an actual walk-in customer, but who was, in fact, an undercover investigator for the California Department of Insurance.

COUNTS TWO THROUGH SIX

[42 U.S.C. § 1320a-7b(b)(2)(A); 18 U.S.C. § 2(b)]

38.  The Grand Jury hereby repeats and realleges paragraphs 1 through 34, 36, and 37 of this Indictment as if fully set forth herein.

39.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant JENSEN knowingly and willfully offered and paid, and willfully caused to be offered and paid, remuneration, that is, either checks or wire transfers payable in or about the amounts set forth below, to defendants SINEL, ROUB, JANDA, SCHOONOVER, and others known and unknown to the Grand Jury, for their referrals of patients to Valley View with prescriptions for compounded drugs for which payment could be made in whole and in part under a Federal health care program, including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| TWO | 1/3/2012 | Check number 73461, drawn on the Valley View Bank of the West Account, in the amount of $19,532.13, payable to P.B. (for the benefit of defendant JANDA) |
| THREE | 6/12/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $6,464.57 |

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| FOUR | 01/15/2013 | Check number 75283, drawn on the Valley View Bank of the West Account, in the amount of $17,256.47, payable to Samia Solutions LLC (for the benefit of defendants SINEL and ROUB) |
| FIVE | 11/04/2013 | Check number 260, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,317.51, payable to P.B. (for the benefit of defendant JANDA) |
| SIX | 8/4/2014 | Check number 0777, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $55,848.21, payable to Samia Solutions LLC (for the benefit of defendants SINEL and ROUB) |

COUNTS SEVEN THROUGH ELEVEN

[42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2(b)]

40.   The Grand Jury hereby repeats and realleges paragraphs 1 through 34, 36, and 37 of this Indictment as if fully set forth herein.

41.   On or about the following dates, in Los Angeles and Fresno Counties, within the Central and Eastern Districts of California, and elsewhere, defendant JANDA knowingly and willfully solicited and received, and willfully caused to be solicited and received, remuneration, that is, checks payable in or about the amounts set forth below, in return for referring patients to Valley View with prescriptions for compounded pain medications for which payment could be made in whole and in part under a Federal health care program, including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| SEVEN | 12/8/2011 | Check number 73355, drawn on the Valley View Bank of the West Account, in the amount of $18,131.80, payable to P.B. (for the benefit of defendant JANDA) |
| EIGHT | 1/3/2012 | Check number 73461, drawn on the Valley View Bank of the West Account, in the amount of $19,532.13, payable to P.B. (for the benefit of defendant JANDA) |

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| NINE | 5/01/2013 | Check number 144, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,199.28, payable to P.B. (for the benefit of defendant JANDA) |
| TEN | 8/01/2013 | Check number 208, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $24,331.78, payable to P.B. (for the benefit of defendant JANDA) |
| ELEVEN | 11/04/2013 | Check number 260, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,317.51, payable to P.B. (for the benefit of defendant JANDA) |

COUNTS TWELVE THROUGH SIXTEEN

[42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2(b)]

42.   The Grand Jury hereby repeats and realleges paragraphs 1 through 34, 36, and 37 of this Indictment as if fully set forth herein.

43.   On or about the following dates, in Los Angeles Fresno, and San Diego Counties, within the Central, Eastern, and Southern Districts of California, and elsewhere, defendant SCHOONOVER knowingly and willfully solicited and received, and caused to be solicited and received, remuneration, that is, wire transfers payable in or about the amounts set forth below, in return for referring patients to Valley View with prescriptions for compounded pain medications for which payment could be made in whole and in part under a Federal health care program, including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| TWELVE | 6/12/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $6,464.57 |
| THIRTEEN | 10/16/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $4,901.80 |

///
///
///

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| FOURTEEN | 11/07/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $8,193.68 |
| FIFTEEN | 2/25/2013 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $4,810.23 |
| SIXTEEN | 2/25/2013 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $2,508.22 |

COUNTS SEVENTEEN THROUGH TWENTY

[42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2]

44.  The Grand Jury hereby repeats and realleges paragraphs 1 through 34, 36, and 37 of this Indictment as if fully set forth herein.

45.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants SINEL and ROUB, each aiding and abetting the other, knowingly and willfully solicited and received, and willfully caused to be solicited and received, remuneration, that is, checks payable in or about the amounts set forth below, in return for referring patients to Valley View with prescriptions for compounded pain medications for which payment could be made in whole and in part under a Federal health care program, including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| SEVENTEEN | 10/2/2012 | Check number 74722, drawn on the Valley View Bank of the West Account, in the amount of $37,238.26, payable to Samia Solutions LLC |
| EIGHTEEN | 01/15/2013 | Check number 75283, drawn on the Valley View Bank of the West Account, in the amount of $17,256.47, payable to Samia Solutions LLC |

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| NINETEEN | 01/22/2013 | Check number 75342, drawn on the Valley View Bank of the West Account, in the amount of $17,220.48, payable to Samia Solutions LLC |
| TWENTY | 8/4/2014 | Check number 0777, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $55,848.21, payable to Samia Solutions LLC |

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C); 28 U.S.C. § 2461(c)]

46.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given to defendants JENSEN, JANDA, SINEL, ROUB and SCHOONOVER (collectively, the "defendants") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under any of Counts One through Twenty of this Indictment.

47.   Defendants shall forfeit to the United States the following property:

a.   all right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense set forth in any of Counts One through Twenty of this Indictment including, but not limited to, the following funds seized from bank accounts on or about July 6, 2015, pursuant to federal seizure warrants: (i) approximately $8,488,673.61 in funds seized from a Bank of the West account with the last four digits ending in 6710; (ii) approximately $700,000.00 in funds seized from a Friendly Hills Bank account with the last four digits ending in 6648; (iii) approximately $500,000.00 in funds seized from a Bank of the West account with the last four digits ending in 3294; and (iv) approximately $271,121.45 in funds seized from a Friendly Hills Bank account with the last four digits ending in 6655; and

b.    a sum of money equal to the total value of the property described in subparagraph a.    For each of Counts one through Twenty of this Indictment for which more than one defendant is found guilty, each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to that Count.

48.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court;

///

///

///

1    (d) has been substantially diminished in value; or (e) has been

2    commingled with other property that cannot be divided without

3    difficulty.

4

5                                              A TRUE BILL

6

7                                              _/S/_____
                                               Foreperson

8
     EILEEN M. DECKER
9    United States Attorney

10

11
     LAWRENCE S. MIDDLETON
12   Assistant United States Attorney
     Chief, Criminal Division

13
     GEORGE S. CARDONA
14   Assistant United States Attorney
     Chief, Major Frauds Section

15
     LIZABETH A. RHODES
16   Assistant United States Attorney
     Chief, General Crimes Section

17
     STEPHEN A. CAZARES
18   Assistant United States Attorney
     Deputy Chief, Major Frauds Section

19
     CATHY J. OSTILLER
20   Assistant United States Attorney
     Deputy Chief, General Crimes Section

21
     MARK AVEIS
22   Assistant United States Attorney
     Major Frauds Section

23
     ASHWIN JANAKIRAM
24   Special Assistant United States Attorney
     General Crimes Section

25

26

27

28